IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA HUGHES, | ) | CASE NO. 1:07-CV-3130 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD NUGENT |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lisa Hughes's ("Plaintiff" or "Hughes") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  **INTRODUCTION & PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of June 15, 2004.  (Tr. 31).  Her application was denied initially and upon reconsideration.  Plaintiff timely requested and was granted an administrative hearing.  On April 3, 2007, Plaintiff appeared with counsel and testified at a video hearing held before Administrative Law Judge Paul Armstrong ("ALJ Armstrong").[1]  (Tr. 31).  Plaintiff appeared in Mansfield, Ohio and ALJ Armstrong presided over the proceeding from Chicago, IL.  *Id.*  On April 25, 2007, ALJ

---

[1] At the time of this hearing, Plaintiff was represented by Attorney Mark Nesbit.

Armstrong issued an unfavorable decision ruling that Plaintiff was not disabled. (Tr. 31-36).[2] The Appeals Council denied Hughes's request for review of ALJ Armstrong's decision, and thereafter, Plaintiff sought judicial review in the United States District Court for the Northern District of Ohio.

On April 3, 2008, the Commissioner filed a motion to remand Plaintiff's case for further administrative action due to its inability to locate Plaintiff's claim file or the tape recording of the hearing held before ALJ Armstrong. (Tr. 47-49). Plaintiff did not object to the Commissioner's motion. Therefore, on June 5, 2008, Judge Peter Economus granted the Commissioner's motion to remand the action. (Tr. 52-53).

Prior to Judge Economus remanding the case back to the Social Security Administration, Plaintiff filed a second application for benefits with a protective filing date of October 22, 2007. (Tr. 83-85). Plaintiff's second application was also denied initially and upon reconsideration. (Tr. 37-38). Plaintiff again requested a hearing before an administrative law judge. (Tr. 55-56). On September 18, 2009, the Appeals Council issued an order responding to Judge Economus's order. The Appeals Council vacated ALJ Armstrong's ruling and ordered that a new hearing be scheduled for Plaintiff. (Tr. 70-73). Additionally, the Appeals Council ruled that Plaintiff's subsequent application was duplicative of her initial application and that the ALJ assigned to her case should "associate the claim files and issue a new decision on the associated claims." (Tr. 72).

A second hearing was held on February 9, 2010, via video before Administrative Law Judge Addison Masengill (the "ALJ" or "ALJ Masengill"). (Tr. 382-403). ALJ Masengill presided over the proceeding from Springfield, Massachusetts, and Plaintiff and counsel appeared in Mansfield,

---

[2]From the undersigned's review of the record, it appears that the latter portion of ALJ Armstrong's opinion is missing from the transcript. (*See* Tr. 36).

2

Ohio.  (Tr. 382-84).  Vocational expert, Mr. James Parker (the "VE"), also appeared and testified at the hearing.  (Tr. 397-402).

On March 23, 2010, ALJ Masengill issued a written decision in which the ALJ applied the five-step sequential evaluation,[3] and determined that Plaintiff had not established that she suffered from a medically determined impairment, and therefore, was not disabled.  (Tr. 7-14).  Hughes requested review of the ALJ's decision from the Appeals Council.  (Tr. 3C).  On July 12, 2010, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner.  (Tr. 3A-3B).  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 1383(c).

---

[3] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

Hughes, born on November 28, 1994, was twenty-five years old at the time of the hearing (Tr. 388), and considered a "younger person" (under age 50) for Social Security purposes. *See* 20 C.F.R. § 416.963(c). She took special education classes and graduated from high school. (Tr. 387). Plaintiff reads at a fifth grade level. *Id.*

## II. **MEDICAL EVIDENCE**

Plaintiff suffers from a range of physical and mental maladies including borderline intellectual functioning, panic disorder, and a lesion in her pituitary gland. Plaintiff began treatment with Dr. Mehrdad Tavallaee in June of 2005. During the time that Dr. Tavallaee treated Plaintiff, she complained of depression, headaches, anxiety, dizzy spells, and anger issues. (Tr. 263-75). Dr. Tavallaee prescribed Plaintiff medication to treat these symptoms. In January of 2006, Dr. Tavallaee ordered Plaintiff to undergo magnetic resonance imaging ("MRI") testing on her brain. (Tr. 265). The MRI results showed normal brain functioning. *Id.* Plaintiff's final visit with Dr. Tavallaee was on February 9, 2006. On this visit, Hughes complained of depression and Dr. Tavallaee adjusted her medication. (Tr. 264).

In September of 2006, Plaintiff started receiving treatment at Appleseed Community Mental Health Center ("Appleseed"). (Tr. 337-47). During her initial diagnostic assessment, Hughes reported that she was angry and depressed. (Tr. 337). She also expressed an interest in seeking a physician to evaluate her medication and receive counseling services. *Id.* Plaintiff was diagnosed with dysthymic disorder, panic disorder without agoraphobia, borderline intellectual functioning, and a host of other maladies. (Tr. 346).

In October of 2006, Plaintiff presented to Dr. John Beckner, a psychiatrist, stating that she was seeking medication to treat her depression, anxiety, and panic problems. (Tr. 335). Hughes told

4

Dr. Beckner that at times she felt lightheaded and dizzy, and experienced helplessness, hopelessness, and worthlessness. *Id.* Plaintiff denied suicidal or homicidal ideations, hallucinations and delusions. (Tr. 336). Dr. Beckner also diagnosed Hughes with dysthymic disorder, panic disorder without agoraphobia, borderline intellectual functioning, migraines, and heart problems. *Id.* He rated her global assessment functioning ("GAF") score as 60. *Id.* Additionally, Dr. Beckner prescribed Plaintiff Zoloft. *Id.* He continued to treat Plaintiff and adjusted her medication several times during 2007. (Tr. 329-34).

In December of 2007, Dr. Frank Orosz, a state agency psychologist, completed a Mental Residual Functional Capacity Assessment form. (Tr. 372-74). Pursuant to Social Security Acquiescence Ruling 98-4, Dr. Orosz adopted the mental residual functional capacity ("RFC") finding announced by ALJ Armstrong, thus concluding that Plaintiff had the RFC "for simple repetitive tasks with no more than superficial contact with supervisors, co-workers, and the general public." (Tr. 374).

On March 11, 2008, Dr. Beckner completed a Mental Status Questionnaire from the Bureau of Disability Determination. (Tr. 312-13). He indicated that Hughes had a limited ability to remember, understand and follow directions due to cognitive defects, a shorter attention span and poor focus. (Tr. 313). On this same day, Plaintiff's case manager at Appleseed also completed a Mental Status Questionnaire from the Bureau of Disability Determination. (Tr. 315-16). Her case manager commented that Plaintiff had a "lack of awareness/poor insight into work related needs and concerns[,] poor coping skills, [a] lack of interpersonal boundaries and process, anxiety, depression, [and] cognitive limitations". (Tr. 315).

5

Later, on April 1, 2008, State Agency Psychologist Karla Voyten, reviewed Plaintiff's record. Dr. Voyten noted that Hughes continued to complain of depression, but that her "affect [wa]s documented as appropriate." (Tr. 376). Dr. Voyten affirmed Dr. Orosz's assessment as written. *Id.*

On July 1, 2009, Dr. Beckner co-signed a Medical Source Statement also signed by Nurse Pam Patterson. (Tr. 290-91). In the form, they rated Hughes's skills as "fair" in the following areas: follow work rules; use judgment; maintain attention and concentration for extended periods of 2 hour segments; respond appropriately to changes in routine settings; maintain regular attendance and be punctual within customary tolerance; deal with the public; relate to co-workers; interact with supervisor(s); complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out simple job instructions; socialize; behave in an emotionally stable manner; relate predictably in social situations; management of funds/schedules; ability to leave home on own. *Id.* However, they rated her as "poor" in the areas of: function independently without special supervision; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stress; understand, remember and carry out complex job instructions; understand, remember and carry out detailed, but not complex job instructions. *Id.* Finally, they stated that Plaintiff had a very good ability to maintain her appearance. *Id.*

Additionally, on July 1, 2009, Plaintiff underwent another MRI scan of her brain. During this testing, doctors found a lesion in Hughes's pituitary gland which they described as a "right paramedian nonenhancing nodule centered within the pituitary gland". (Tr. 187). Subsequently,

Plaintiff presented to Dr. Sanjit Bindra, an endocrinologist, for an initial pituitary assessment. (Tr. 174-78). Dr. Bindra noted that Plaintiff had elevated prolactin levels which could be caused by her psychiatric medications. (Tr. 175). Dr. Bindra diagnosed Hughes with hyperprolactinemia and pituitary microadenoma and informed her to return in approximately six weeks. (Tr. 176).

On August 6, 2009, Dr. Beckner cosigned a Mental Status Exam form completed by social worker, Ms. Christina Benton. (Tr. 286-87). The form indicated that Hughes was mildly depressed and constricted, and had mild problems with memory, attention and concentration, and the ability to abstract. (Tr. 286). It also noted that Plaintiff had no complaints of delusions or hallucinations. *Id.*

## III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial

7

evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

After completing a review of the record, ALJ Masengill determined that Hughes was not disabled. (Tr. 7-14). At step one of the sequential evaluation analysis, the ALJ found that Hughes had not engaged in substantial gainful activity since the date of her initial application filed on June 15, 2004. (Tr. 9). At step two, ALJ Masengill ruled that Plaintiff suffered from two severe impairments: borderline intellectual functioning and panic disorder. *Id.* But, at step three, the ALJ concluded that neither of these impairments, individually or in combination, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 9-10). Before proceeding to step four, ALJ Masengill found that Hughes retained the RFC to perform "a full range of work at all exertional levels". (Tr. 11). However, the ALJ noted that Plaintiff had several non-

exertional limitations. Namely, the ALJ held that Plaintiff's work should only involve incidental contact with the general public, occasional contact with coworkers, and that the work should not require the ability to read higher than at the fifth grade level. *Id.* Next, at step four, ALJ Masengill determined that Hughes did not have any past relevant work. (Tr. 13). Lastly, at step five, the ALJ ruled that Plaintiff's RFC allowed her to perform jobs which existed in significant numbers in the national economy. (Tr. 13-14). Specifically, the ALJ held that Plaintiff could work as a hand packer, production helper, or as a janitor. (Tr. 13).

Hughes attacks the ALJ's decision on three grounds. First, she argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating physician. Second, Hughes maintains that ALJ Masengill's failure to obtain a psychological consultative examination or medical expert testimony was erroneous and warrants remand. Finally, Plaintiff submits that the Commissioner's decision is faulty because the ALJ should have considered Plaintiff's diagnosis of headaches as a severe impairment.

### A. Treating Physician

Hughes asserts that ALJ Masengill failed to comply with the so-called treating physician rule by failing to state adequate reasons for rejecting the opinions of Plaintiff's treating psychiatrist, Dr. John Beckner. When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(d)(2). Opinions from such physicians are entitled to controlling weight if the

9

opinion (1) is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Id*.

Even when the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The regulations also require the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. *Id*.

The Sixth Circuit has explained that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*,

409 F. App'x 852, 860 (6th Cir. 2011) (*quoting* Wilson, 378 F.3d at 543-46).

In the instant case, Hughes purports that ALJ Masengill failed to provide adequate reasons for rejecting Plaintiff's treating psychiatrist's findings. The record contains two reports issued by Dr. Beckner. The first report was a Mental Status Questionnaire completed by Dr. Beckner on March 11, 2008. (Tr. 312-14). The questionnaire is handwritten making it difficult to read portions of the report. However, this report does not form the basis of Plaintiff's appeal.[4] Rather Plaintiff's argument focuses on the ALJ's treatment of Dr. Beckner's second report.

On July 1, 2009, Dr. Beckner and Nurse Pam Patterson co-signed a Medical Source Statement. (Tr. 290-91).[5] The report asked the respondent to rate the claimant's abilities in several categories of performance with scores ranging from "very good" to "poor". In the report, Dr. Beckner opined that Plaintiff had a "fair" ability to perform nine out of twelve occupational adjustment skills, one out of three intellectual functioning skills, and five out of six[6] personal and social adjustment skills. *Id.* The document defined "fair" as follows: "[a]bility to function is this area is moderately limited but not precluded[, m]ay need special consideration and attention." (Tr. 290). Additionally, Dr. Beckner rated Hughes's abilities as poor in three out of twelve areas of occupational adjustment, and in two of the three areas of intellectual functioning. (Tr. 290-91). More specifically, within the occupational adjustment category, he indicated that Hughes had a poor

---

[4]As Defendant pointed out, nothing in Plaintiff's brief suggests that Dr. Becker's March of 2008 report justified greater limitations than those found by the ALJ. (Def.'s Br. at 11, fn. 6). Plaintiff's failure to object to this notion further persuades the Court that this report is not at issue.

[5]For sake of clarity, the Court will only refer to this report as being authored by Dr. Beckner.

[6]Dr. Beckner noted that Plaintiff had a "very good" ability to maintain her appearance, in the sixth category under personal and social adjustment.

ability to "function independently without special supervision", "work in coordination with or proximity to others without being unduly distracted or distracting" and "deal with work stresses"; under the category focusing on intellectual functioning, Dr. Beckner found that Plaintiff had a poor ability to "understand, remember and carry out detailed, but not complex job instructions" and "understand, remember and carry out complex job instructions". *Id.* The document defined "poor" as follows: "[a]bility to function is significantly limited." *Id.*

ALJ Masengill assigned less weight to the portion of Dr. Beckner's findings rating Hughes as poor in the areas of occupational adjustment (i.e. function independently without special supervision, work in coordination with others without being distracted or distracting, and deal with work stress) ruling that these findings were not supported by the medical record. (Tr. 12).[7] In addition, ALJ Masengill commented that State Agency Physician Frank Orosz found that Hughes was capable of working as long as she had no more than superficial contact with others. The ALJ also explained that he was partially discrediting Dr. Beckner's opinions because Plaintiff was found to have a "relatively positive GAF [score] of 60" as recently as 2006, and because her "treating sources d[id] not confirm the extent of the claimant's alleged disability". (Tr. 13).

Plaintiff appears to be challenging the sufficiency of the reasons stated by ALJ Masengill based upon two separate arguments, both of which the undersigned rejects. First, Hughes contends that it was improper for the ALJ to consider Dr. Orosz's opinions or her GAF score from 2006 because both of these pieces of evidence were based upon Plaintiff's condition prior to 2008 when

---

[7]Presumably, the ALJ accepted Dr. Beckner's finding that Plaintiff had a poor ability to understand, remember and carry out complex or detailed job instructions because the ALJ's hypothetical question presented to the VE specifically asked the VE to identify jobs only involving "simple, unskilled tasks". (Tr. 398).

her condition significantly worsened. Plaintiff maintains that during the years of 2006 and 2007, she merely complained of "panic attacks, depression, anger, poor concentration, crying spells, and fatigue." (Pl.'s Br. at 14). However, Hughes submits that in 2008 through 2009, her symptoms further deteriorated and she began to also experience hearing voices and footsteps, paranoia and suicidal ideation, as documented by noted changes in her prescription medication during this time.

The Court is unpersuaded by this argument for several reasons. To begin, the ALJ's reliance upon Dr. Orosz's opinion was proper. During Plaintiff's initial hearing held before ALJ Armstrong, the ALJ found that Plaintiff retained the RFC to perform work at any exertional level, except that she was restricted to simple, unskilled work with no more than superficial contact with others. (Tr. 34). When Dr. Orosz reviewed Hughes's file in December of 2007, he adopted ALJ Armstrong's RFC pursuant to Social Security Acquiescence Ruling 98-4(6).[8] (Tr. 374). Subsequently, State Agency Physician Karla Voyten reviewed Plaintiff's file on April 1, 2008. (Tr. 376). Dr. Voyten indicated that she had examined all of the evidence within Hughes's file, and based on this examination, concluded that Dr. Orosz's assessment should be affirmed. *Id.* Thus, even assuming *arguendo* that Dr. Orosz's findings were ill-founded, Dr. Voyten's affirmation of those findings in April of 2008, served as a confirmation of the RFC provided by Dr. Orosz, and thereby justified the ALJ's reliance upon Dr. Orosz's opinion. Accordingly, the ALJ's treatment of Dr. Orosz's opinion was not in error.

---

[8]This ruling states that the "Social Security Administration (SSA) must adopt a finding of a claimant's residual functional capacity, or other finding required under the applicable sequential evaluation process for determining disability, made in the final decision by the ALJ or Appeals Council on the prior disability claim" in the absence of new and additional evidence or changed circumstances. AR 98-4(6); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

Despite Hughes's identification of records illustrating that her symptoms worsened during 2008 and 2009, there are conflicting records from this same time period which suggest that Plaintiff's condition had not intensified as she claims. For example, progress notes dated between May and September of 2008 from Applewood reflect that Hughes was doing well and felt like her medication was working. (Tr. 302-07, 309). While a progress note dated January 14, 2009, indicated that Plaintiff still reported pacing, she also reported that her depression was "not that much worse." (Tr. 298). Likewise, in April of 2009, she still complained of pacing, but the record also shows that her feeling of being "spaced out" could be linked to boredom or inactivity because Plaintiff did not have much to do to keep her occupied during the week. (Tr. 296). In fact, in April of 2009, Plaintiff was optimistic about getting her own apartment. (Tr. 294). During this visit, Hughes also admitted that she had lost her medication a week prior and was feeling more paranoid without having it in her system. *Id.* Thus, the record does not clearly establish that Hughes's condition severely deteriorated between 2007 and 2009. Although Plaintiff cited the Daily Activities Questionnaire completed by her case manager at Appleseed as supporting Dr. Beckner's findings, Hughes failed to state how or what part of this report demanded restrictions greater than those imposed by the ALJ. (Doc. 25 at 12). Accordingly, ALJ Masengill found that the treatment records from Dr. Beckner and Appleseed did not support Dr. Beckner's "poor" rating of Plaintiff's abilities in certain categories. Additionally, although Plaintiff's GAF score of 60 was somewhat dated, Plaintiff has failed to show that her mental faculties substantially decreased after 2006 when Dr. Beckner evaluated her and assigned this score. In fact, Dr. Beckner rated her GAF score at 60 again when he examined her in May of 2007. (Tr. 330).

Hughes also attacks ALJ Masengill's stated reasons for rejecting Dr. Beckner's findings by pointing to evidence in the record which she submits supports Dr. Beckner's findings. First, Plaintiff asserts that her need to live with her mother, except for the short time period in which she lived with her boyfriend, is "relevant" to Dr. Beckner's suggestion that she could not function independently without special supervision. While this fact may indeed be relevant to whether Plaintiff could work independently, it is not dispositive of the issue. Next, Hughes suggests that her struggle with hearing voices, paranoia and suicidal ideation demonstrates that she would distract herself or others while working. Again, it is quite conceivable that Plaintiff's mental impairments could impose some limitation on her ability to work, however, the ALJ concluded that there was no evidence in the record as a whole or in Dr. Beckner's treatment notes to demonstrate that these impairments would significantly limit Plaintiff's ability to work to the extent identified by Dr. Beckner. Moreover, aside from merely restating her alleged symptoms of hearing voices, paranoia and suicidal ideation, Plaintiff has not identified any such proof that would substantiate Dr. Beckner's findings either. Lastly, Hughes argues that Dr. Beckner's knowledge of Plaintiff's complaints about her inability to handle stress supports Dr. Beckner's finding that Plaintiff had a poor ability to cope with work stresses. Plaintiff's recitation of this evidence is also insufficient to undermine the ALJ's stated reasons for discrediting Dr. Beckner's findings.

Ultimately, the ALJ provided a sufficient explanation for discrediting a portion of Dr. Beckner's opinion regarding Plaintiff's abilities. ALJ Masengill indicated that certain findings of Dr. Beckner's were being given less weight because they were not supported by the record as a whole nor by the treatment notes of Plaintiff's treating sources. In addition, the ALJ found that Plaintiff's GAF score suggested that she was not as limited as Dr. Beckner opined. The ALJ further

noted that Dr. Orosz opined that Plaintiff was capable of working as long as her work involved only minimal contact with supervisors, co-workers and the public. Therefore, the undersigned finds that the ALJ provided adequate reasons to explain the weight given to Dr. Beckner's opinion in satisfaction of the "good reasons" requirement of the treating source rule.

### B. Psychological Consultative Examination/Medical Expert Testimony

Next, Plaintiff maintains that the ALJ committed substantial error by failing to request that a consultative examination be performed on Hughes, or in the alternative, by failing to seek the testimony of a medical expert during the hearing. Plaintiff's argument is based upon her dissatisfaction with the psychological capacity reports issued by the two state agency physicians on record. According to Hughes, Dr. Orosz's opinion was simply a reiteration of ALJ Armstrong's RFC, and Dr. Voyten's findings merely affirmed Dr. Orosz's opinion without adequate justification.

The regulations governing Social Security claims specify that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917). Thus, there is no mandate requiring an ALJ to solicit such evidence. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) ("20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony..."). Ultimately, the ALJ is charged with the duty of evaluating the medical evidence on record and determining the claimant's RFC. *See* 20 C.F.R. § 404.1546(c). Although an ALJ may not substitute his/her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

16

Here, ALJ Masengill had sufficient medical evidence by which to make a determination regarding Hughes's disability status.  The ALJ had the benefit of examining records from a number of sources, including medical records from Appleseed, Dr. Beckner, two state agency physicians, and others.  Although neither state agency physician personally examined Hughes, their opinions were still relevant to the issue and the ALJ had a duty to evaluate this evidence.  20 C.F.R. § 416.927(f)(2)(i)-(ii).  The Court also notes that Plaintiff mischaracterized Dr. Voyten's findings.  Dr. Voyten did not merely rubberstamp Dr. Orosz's findings from 2007.  Rather, Dr. Voyten remarked that she "reviewed all the evidence in [the] file" and based upon this review, she affirmed Dr. Orosz's opinion.  (Tr. 376).

Hughes concedes that ALJs are not required to order a consultative examination or seek expert testimony unless such evidence is necessary in order for the ALJ to render a decision.  (Pl.'s Br. at 17).  However, Plaintiff appears to suggest that ALJ Masengill had a duty to seek further evidence based upon Plaintiff's disagreement with the sufficiency of the reports issued by Drs. Orosz and Voyten.  Yet, the record does not reflect that Plaintiff or her counsel requested ALJ Masengill to seek medical expert testimony or a consultative examination during the hearing.  *See Simpson*, 344 F. App'x at 189 (noting that the lower court upheld the ALJ's determination that the record was complete in light of the extensive medical record before the ALJ and the lack of any request from the plaintiff or counsel for medical expert testimony).  Because the undersigned finds that there was adequate evidence before the ALJ in which to render a determination, the Court declines to accept Plaintiff's contention that ALJ Masengill should have sought additional evidence.  Plaintiff has failed to show the Court how the totality of the evidence before the ALJ was so lacking that it prevented the ALJ from being able to make a disability determination.  In fact, as Defendant

17

notes, Plaintiff's own brief belies Plaintiff's argument that the record was incomplete, as she requests the Court to direct an immediate award of benefits because the substantial evidence in the record proves her entitlement to disability. (Pl.'s Br. at 21). Consequently, the Court finds that the ALJ did not err in failing to order that a consultative examination be performed on Plaintiff, or in the alternative, seek medical expert testimony at the hearing.

### C. Severe Impairment

Finally, Hughes argues that ALJ Masengill erred by failing to consider her diagnosis of headaches to be a severe impairment at step two of the sequential evaluation analysis. Plaintiff cites to treatment notes in the record reflecting her intermittent complaints of headaches throughout the relevant time period and her MRI test results revealing a small lesion within her pituitary gland, in support of this argument. It is well-established that this circuit views the step two determination as "a de minimis hurdle in the disability determination process." *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table) (*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Thus, a claimant's impairment should only be labeled as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work". *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). However, the ALJ's failure to label one's condition as a severe impairment does not constitute reversible error when the ALJ determines that the individual has at least one other severe impairment and continues to evaluate both Plaintiff's severe and non-severe impairments during the remaining steps in the evaluation analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The Court rejects Plaintiff's argument for two independent reasons. First, although ALJ Masengill failed to list Plaintiff's headaches as a severe impairment, the ALJ found that Hughes suffered from two other severe impairments and continued to examine all of Plaintiff's impairments at the latter stages of the determination process. Accordingly, under *Maziarz* remand is not warranted because the ALJ's failure to label this condition as severe did not constitute as reversible error. *Id.*; *see also Stoltz v. Astrue*, No. 3:07-CV-429, 2009 WL 161329, at * 6 (S.D. Ohio Jan. 22, 2009) (holding that the ALJ's failure to find that the claimant's headaches were a severe impairment was not reversible error because the ALJ found that the claimant had other severe impairments and proceeded with the remaining steps of the sequential evaluation process). Additionally, the undersigned finds that the ALJ did not err by failing to identify Hughes's headaches as a severe impairment because Hughes did not allege that her headaches effected her ability to work. "The burden lies with the claimant to prove that she is disabled." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (*citing Foster*, 279 F.3d at 353). During the course of the hearing before ALJ Masengill, neither Plaintiff nor her counsel informed the ALJ that Hughes's disability claim was premised upon her diagnosis of headaches. (Tr. 384-403). Notably, Plaintiff's testimony only referenced her headaches once when she mentioned that they were a symptom of her panic attacks, which reasonably led the ALJ to conclude that her panic disorder was a severe impairment. (Tr. 394). In addition, Plaintiff's counsel stated that he was not certain whether the lesion recently found in Plaintiff's pituitary gland played any role in her symptomatology, but that her primary problem was her panic disorder. (Tr. 386). Plaintiff's attempt to now assert that her headaches were disabling is akin to "Monday morning quarterbacking." If Hughes believed that her headaches were relevant to her claim, it was her duty to raise this issue to the ALJ. At this juncture it is too late to

propose that this impairment was a basis for her claim. Accordingly, the Court finds that the ALJ's failure to state that Hughes's headaches were a severe impairment was not erroneous.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: August 5, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).